## DONOVAN v. McGURRIN.

No. 4363.   Decided November 20, 1926.   (251 P. 1067.)

1

E. A. *Rogers,* of Salt Lake City, for appellant.

*Walton, Walton & Nelson* and *Shobert & Hedrick,* all of Salt Lake City, for respondent.

CHERRY, J.

Plaintiff brought this action against defendant to recover $1,914.71, as damages for the failure of defendant to deliver seventy-five shares of the capital stock of the National Piston & Ring Company, a corporation, which it was alleged defendant was bound to deliver to plaintiff on October 6, 1921, by virtue of a contract of sale between the parties. The plaintiff had judgment for the principal sum of $714.71, from which both parties have appealed.

The questions necessary for decision relate to the interpretation of the contract with respect to the stipulations of the parties for the transfer or delivery of the stock agreed to be sold. The proof of the contract consists of numerous letters and telegrams admitted to have been written and sent by the parties to each other.

At the time the contract was entered into, the defendant resided at Salt Lake City, Utah, and the plaintiff resided at Seattle, Wash. On May 2, 1921, the defendant wrote a letter to the plaintiff, stating that he owned 1,500 shares of the stock in controversy, which was deposited with, and held in escrow by, a certain bank in Seattle, "and to be delivered to me October 6, 1921," and that he was anxious to dispose of some of it. The plaintiff who was a broker or dealer in

stocks replied, showing an interest in the matter, and inquiring the price for which defendant was willing to sell. The defendant thereupon offered to sell 500 shares, or any portion thereof, at $10 per share, net to him, limiting the offer in time to June 1, 1921. Plaintiff asked for additional time, whereupon the defendant, on May 28th, wrote a letter making the same offer, but extending the time to June 11th, adding:

"Be sure to sell the stock subject to the escrow with the bank of California, as I agreed to allow the stock to remain in the bank until next October."

The next letter from the plaintiff, dated June 2d, stated that he had called at the bank, and examined the escrow agreement; that he had proposed to the bank that it issue receipts to buyers of the stock, which the bank declined to do, for the reason that it was merely the custodian of the stock, and would not assume any additional responsibility. It was further stated that the bank officials had been told by Johnston (the person by whom the stock had been deposited in escrow for defendant) that there was an understanding with him that defendant's stock would not be offered for sale prior to October 6th. The letter pointed out that the uncertainty of delivery was a difficulty in the way of the sale of stock to others, etc., and that unless the bank could be prevailed upon to issue receipts to buyers, or some business-like arrangement made along these lines, the stock could not be disposed of. The letter concluded:

"If you can work out something and give me additional time after such an arrangement is completed, say ten days, I will undertake to go through and dispose of all, or at least a good portion, of the 500 shares of your stock."

On June 4th the defendant replied to the plaintiff's letter of June 2d, by stating that the obligation of the bank to deliver the stock on October 6th was unconditional; that any person to whom he gave an order or assignment for any portion of the stock "would be entitled to receive it

when the time stated is up," and denying any agreement with Johnston to not dispose of the stock. The next communication was a telegram from the plaintiff dated June 7th, offering $750 for 75 shares of the stock "if you will advise me how to proceed as requested in my letter of June 2d," to which defendant on the same day replied by a telegram:

"Do not know, what to say in addition to my letter which you have received by this time. Am willing to guarantee delivery of stock at expiration of period else will return money. If you can suggest anything different, let me know."

A letter written by defendant on the same day, after confirming the telegram, stated further:

"You say you have examined the escrow with your attorney, therefore you know as much about the matter as I do. The bank there will no doubt follow the escrow instructions to the letter, and I feel confident the stock will be delivered when the escrow period is up. Johnston evidently wants to sell his own stock, and does not like the idea of any one else trying to sell theirs. If your purchasers do not care to part with the possession of their money until they receive their stock, let them put the entire purchase price in the bank, and then when the stock is delivered to them the money can be paid over, and I will take my share and you can take yours. You can go ahead and dispose of the stock with the understanding that I am to assign my right to it and give the purchasers orders for the stock to be delivered to them by the bank at the expiration of the escrow period. This will be sufficient it seems to me. If you can suggest anything different, let me know."

On June 8th, and after the telegram, but not the defendent's letter, of June 7th, above quoted, had been received, the plaintiff sent a telegram to defendant, the relevant parts of which were:

"* * * Wire me * * * the right to handle five hundred shares * * * your piston ring stock at ten dollars per share less ten per cent to me. Offer to hold good until noon July 1. You to forward receipts for money and orders for stock as sold. Sales to be completed by delivery of stock October sixth."

This offer was not accepted. Up to this point the parties had not agreed upon the terms and conditions of a sale. No offer made by either of them had been accepted by the other. Their communications and negotiations with each other up to this time are important only as an aid in determining the meaning and intent of their subsequent correspondence, which did result in a meeting of their minds and a contract of sale.

On June 9th, the defenndant sent to the plaintiff a telegram and a letter. As this was the offer which was accepted by the plaintiff, and which constitutes the contract between the parties, the body of the letter (which includes the telegram) is quoted in full, as follows:

"Your wire of the 8th inst. received and I have replied as follows: 'Will give you exclusive right to purchase five hundred shares of my piston stock now held by bank of California at ten dollars per share less ten per cent commission at anytime prior to July 1, 1921. All money to be deposited First National Bank of Seattle to my credit upon which being done I will give partial assignment of stock purchased, or order for same to be delivered at expiration of period.'

"As stated therein, I will assign all my right, title and interest in the shares of stock you buy to you, and will give you an order on the bank to deliver you the stock at the expiration of the escrow period. The escrow instructions are clear and unambiguous and the bank will doubtless follow them to the letter so there ought to be no doubt but that you will get any stock you have a partial assignment of or an order for the delivery of the same to you at the time stated in the escrow.

"If this is satisfactory, and you are willing to accept such an assignment and an order, you can go ahead and sell the five hundred shares on the terms stated in my telegram to you of even date. If not, we may be able to do something with Johnston and clear up the situation."

Thereafter the plaintiff accepted the offer and deposited $675 in the designated bank to the credit of defendant in payment for 75 shares of the stock. The defendant, on June 14th, acknowledged receipt of the money deposited, and forwarded to plaintiff assignments of "all his right,

title and interest" in and to 75 shares of the stock, describing it and referring to the escrow, and directing the escrow holder to deliver the stock so assigned at the time provided for delivery by the escrow agreement. The plaintiff accepted the assignment of the right to the stock without question. The bank holding the escrow failed to deliver the stock on the 6th of October, 1921. It affirmatively appears that the failure to make the delivery on the date mentioned was the fault of the bank, and did not result from any act or omission of the defendant. Neither is it claimed that he ever made any misrepresentation concerning his right to the stock, or the conditions of the escrow.

The plaintiff's action is based upon the theory that the defendant was bound by the contract to deliver certificates for the stock on the date mentioned, and that his failure to make the delivery constituted a breach which entitled the plaintiff to damages, under the circumstances of this case, in a sum equal to the market value of the stock on the date delivery was agreed to be made, amounting, as claimed by the plaintiff, to $1,875.

On the other hand, the defendant contended that the contract was limited to a sale and transfer only of the defendant's right to the stock, which was fully performed by his assignment thereof, which was subject to the terms and conditions of the escrow agreement under which the stock was held.

The trial court apparently took the middle ground that the defendant was bound by the statement made in his telegram of June 7th: "Am willing to guarantee delivery of stock at expiration of period else will return money," and held the defendant for the amount paid for the stock. The theory upon which the trial court included in the damages the additional sum of $39.71, which was a loss suffered by the plaintiff arising out of a contract, which he could not complete, for a resale of a portion of the stock in suit, is not perceived.

The respective contentions of the parties as made in the

trial court are reasserted here in support of their separate appeals. Both are dissatisfied with the judgment of the trial court.

The case is in narrow compass. A determination of what the contract was between the parties respecting the thing sold and its transfer ends the inquiry. If the defendant was bound by express or implied obligation to deliver the certificates for the shares of stock in question, at the time stated, the plaintiff's contention must prevail. If the offer contained in the telegram of June 7th to guarantee delivery, else return the purchase price, was carried forward, and included in the contract as finally made, the judgment, with a slight modification, ought to be affirmed. And, if the contract of the parties contemplated but a sale and transfer of the defendant's interest in the subject-matter of the sale, with an agreement on his part to assign the same to the plaintiff, the admitted facts in the case show a full performance of the contract by defendant, and thus preclude recovery by the plaintiff.

We first dispose of the offer contained in the defendant's telegram of June 7th, viz.: "Am willing to guarantee delivery of stock at expiration of period else will return money." This offer was made when the price of the stock in the negotiations stood at $10 per share. The offer was not accepted. It was followed by a counter offer, proposing a less price and new and different terms of delivery, viz. "sales to be completed by delivery of stock October 6th." Had this offer been accepted by defendant, his obligation to deliver certificates for the stock on the date mentioned would be undeniable. Defendant did not accept the offer, but made another one, which was accepted by plaintiff, which expressly defined and limited the thing sold and the manner in which it was to be transferred, and which necessarily excluded any undertaking on his part to guarantee delivery on October 6th. We think the offer contained in the telegram of June 7th to guarantee delivery or return the purchase price was not carried for-

ward and included in the contract as finally made. This point is practically conceded by plaintiff's counsel, and defendant's counsel insists upon it.

The plaintiff's claim is based upon an implied obligation of the defendant to deliver the certificates of stock on October 6th. His counsel say in their brief:

" * * * We predicate our right to recover upon the terms of the contract evidenced by the correspondence of June 9th and subsequent thereto. Accordingly, treating the contract here as consisting only of defendant's offer of June 9, 1921, coupled with the plaintiff's acceptance by depositing in the designated bank the purchase price of 75 shares of the stock and the defendant's acknowledgment of receipt thereof in full payment therefor, it follows that due performance thereof on the part of defendant required the delivery of a certificate for the stock at the time fixed, independently of any express agreement or guaranty to deliver."

Certain general principles of law concerning the conditions under which terms of contracts may be implied are stated in 13 C. J. 558, as follows:

"In order that an unexpressed term may be implied, the implication must arise from the language employed in the instrument or be indispensable to effectuate the intention of the parties. There can be no implication as against the express terms of the contract, and courts will be careful not to imply a term when the contract is intentionally silent, or which is against the intention of the parties as gathered from the whole of the instrument."

The contract in question is complete in itself so far as the thing sold and method of its transfer is concerned. No implied obligation is indispensable to effectuate the intention of the parties, because a completed transaction is provided for by express stipulations. Looking back at the preceding negotiations of the parties for the purpose of explaining their final agreement, we find the defendant repeatedly describing the situation of the stock in question and his interest in it, and constantly limiting his offers to an assignment and sale of his interests therein. A most signifi-

cant feature of the negotiations concerning the question now in controversy was the plaintiff's proposal of June 8th, wherein he specified, among other things, this condition: "Sales to be completed by delivery of stock October 6th." This offer was not accepted but was followed by defendant's counter offer, which differed from the plaintiff's proposal only by omitting the stipulation for delivery on October 6th, and expressly offering an assignment of his right, title and interest in the stock, and an order upon the escrow holder for its delivery. Because the subject of the sale and the manner of transfer were expressed in the contract in clear and unequivocal terms, any implied agreement or stipulation upon the subject is necessarily excluded.

What has been said indicates our conclusion that the contract between the parties contemplated a sale and a transfer of the defendant's interest only in the stock in question. From a survey of the whole negotiations between the parties and the express language of the defendant's offer of June 9th, which was accepted, and thus became the contract, we have no difficulty in thus resolving the dispute. The defendant repeatedly and truthfully pointed out the conditions and terms of the escrow, and stated that the sale should be subject to it. The plaintiff knew all facts concerning the escrow, and knew that the defendant had declined to make a contract upon the terms that the "sales to be completed by delivery of stock October 6th." Thereafter the plaintiff accepted the offer of defendant to sell his right, title, and interest in the stock, and to take an assignment thereof. That the defendant had the legal right to make such a sale and transfer cannot be questioned, and that such was the intention and contract of the parties we think is the unavoidable conclusion from the admitted facts in the case.

The judgment is reversed. Costs to defendant.

GIDEON, C. J., and THURMAN, FRICK, and STRAUP, JJ., concur.